## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Carl Crowley**

     v.                           Case No. 19-cv-650-JL
                                               Opinion No. 2020 DNH 018

**Andrew Saul, Commissioner**
**Social Security Administration**

### MEMORANDUM AND ORDER

Carl Crowley has appealed the Social Security Administration's ("SSA") denial of his applications for a period of disability and disability insurance benefits. An administrative law judge ("ALJ") at the SSA ruled that, despite severe impairments, Crowley retained the residual functional capacity ("RFC") to perform a limited range of light work and thus was not disabled as defined by the Social Security regulations during the period at issue. See 20 C.F.R. § 404.1505(a). The ALJ's decision was affirmed by the Appeals Council and therefore became the final decision on his applications. See id. § 404.981. Crowley then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

On appeal, Crowley argues that the ALJ's RFC assessment cannot stand because he improperly evaluated medical opinions, erroneously discounted Crowley's subjective complaints, and misconstrued evidence in the record. See LR 9.1(c). The SSA

Commissioner disagrees and has cross-moved for an order affirming the ALJ's decision.  See LR 9.1(d).  After careful consideration, the court denies Crowley's motion to reverse and grants the Commissioner's cross-motion to affirm the SSA's final decision.

## I.    BACKGROUND[1]

In December 2018, ALJ Thomas Merrill issued a partially favorable decision.[2]  For purposes of Crowley's application for supplemental security income ("SSI"), the ALJ applied the Medical-Vocational Guidelines and found him disabled as of June 19, 2018, when he turned 55 and moved into the advanced age category.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2.  The ALJ found him not disabled for the period between August 29, 2012 and June 18, 2018.  The unfavorable finding precludes Crowley's claim for disability insurance benefits ("DIB") because his insured status expired in September 2014.  See SSR 18-01p, 2018 WL 4945639, at *5 (Oct. 2, 2018).

----

[1]    The court recounts here only those facts relevant to the instant appeal.  The parties' more complete recitations in their Statements of Material Facts (Doc. Nos. 9-2 & 11) are incorporated by reference.

[2]    The ALJ previously issued an unfavorable decision in October 2015.  Crowley appealed to the district court after the Appeals Council denied review.  The parties agreed to a remand for the ALJ to further develop the record and reevaluate a treating physician's opinion.

The ALJ assessed Crowley's claims under the five-step sequential analysis required by 20 C.F.R. § 404.1520.[3] At step one, he found that Crowley had not engaged in substantial gainful activity since August 29, 2012, his alleged disability onset date. Tr. 1984. At step two, the ALJ found that Crowley's degenerative disc disease of the spine, obesity, chronic obstructive pulmonary disease ("COPD"), and depression qualified as severe impairments. Tr. 1984. The ALJ also found that his diabetes and hypertension were not severe impairments. Tr. 1984-85. At step three, the ALJ determined that none of Crowley's impairments, considered individually or in combination, qualified for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 1985; see 20 C.F.R. § 404.1520(d).

The ALJ then found that Crowley had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except he could only lift 20 pounds occasionally and 10 pounds frequently, stand or walk for four hours, and sit for six hours in a day. In addition, he should never crawl or climb ladders, scaffolding or ropes; could occasionally stoop, kneel, crouch, and climb stairs or ramps; and should avoid concentrated exposure to

_____

[3]    The court cites to the regulations applicable to DIB claims. The analogous regulations applicable to SSI claims contain the same requirements. See 20 C.F.R. § 416.901 et seq.

3

respiratory irritants.  In terms of mental functioning, the ALJ
found that Crowley could understand, remember and carry out
simple tasks; maintain concentration, persistence or pace during
two-hour periods; tolerate ordinary and routine interactions
with co-workers and supervisors, as well as brief and routine
interactions with the general public; and adapt to basic changes
for routine tasks, exhibit independent and goal-oriented
behavior, avoid hazards, and travel independently.  Tr. 1991.

The ALJ gave little weight to the opinions of treating
providers Sandra Benckendorf, MD and Thomas Rock, MD.  Tr. 1996-
97.  He gave substantial weight to the opinions of state agency
physicians, Hugh Fairley, MD and Marie Turner, MD.  Tr. 1997.[4]

The ALJ then determined at step four that Crowley could not
perform his past relevant work as a pipe fitter.  Tr. 1999.
Applying the Medical-Vocational Guidelines, the ALJ found
Crowley disabled beginning on June 19, 2018.  Tr. 2000.  The
ALJ, however, found at step five that other jobs existed in the
national economy that Crowley could have performed prior to June
2018, such as a parts cleaner, order caller, and gate attendant.
Tr. 2000.  Accordingly, the ALJ concluded that Crowley had not
been disabled from August 29, 2012 to June 18, 2018.  Tr. 2001.

---

[4]    The ALJ evaluated additional medical opinions in the
record.  As Crowley does not challenge the ALJ's weighing of
those opinions, the court does not address them.

## II.  <u>STANDARD OF REVIEW</u>

The court is authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  <u>See</u> 42 U.S.C. § 405(g).  That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  The court defers to the Commissioner's findings of fact, so long as those findings are supported by substantial evidence.  Id.  Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  "Issues of credibility and the

drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks and brackets omitted).

### III.  ANALYSIS

Crowley alleges that the ALJ erred by concluding that he retained the RFC to perform a limited range of light work. Specifically, the ALJ allegedly failed to give proper weight to the opinions of Crowley's treating providers, insupportably gave substantial weight to the opinion of a state agency physician, improperly evaluated his subjective complaints, and misconstrued evidence in the record.  The court evaluates each argument in turn and concludes that none has merit.

#### A.  Medical Opinion Evidence

An ALJ must consider "medical opinions" provided by both treating and non-treating "acceptable medical sources," "together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(a)-(b) (effective for claims filed before March 27, 2017); see SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  In addition, the ALJ must address each medical opinion and explain why those that conflict with the RFC assessment were not adopted.  SSR 96-8p, 1996 WL 374184, at *7.

The regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). When weighing a medical opinion, an ALJ must consider, inter alia, the nature of the relationship between the medical source and the claimant, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the source of the opinion is a specialist. See id. § 404.1527(c).

A medical opinion from a treating provider is entitled to "controlling weight" if it is well-supported and consistent with substantial evidence. Id. § 404.1527(c)(2). "And even if not deemed controlling, a treating physician's opinion is entitled to weight that reflects the physician's opportunity for direct and continual observation." Purdy, 887 F.3d at 13. An ALJ may discount a treating source's opinion only if he gives "good reasons" for doing so, which must be "both specific and supportable." Jenness v. Colvin, 2015 DNH 167, 2015 WL 9688392, at *6 (D.N.H. Aug. 27, 2015) (citations omitted); see 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). As explained below, the court finds no error in the ALJ's evaluation of the medical opinions at issue here.

1. Dr. Benckendorf's Opinion

The ALJ assigned "little weight" to the opinion of treating physician Dr. Benckendorf. The ALJ's assessment is supported by evidence that is "adequate" to persuade "a reasonable mind." See Irlanda Ortiz, 955 F.2d at 769 (internal quotation marks omitted).

Dr. Benckendorf filled out a residual functional capacity form on Crowley's behalf in May 2014. She described Crowley's symptoms as left low back pain radiating down his left leg, shoulder pain, depression, insomnia, anxiety, cough, and sleep apnea. Tr. 1542. His diagnoses were chronic shoulder pain, "many pinched nerves in his back causing constant pain," and "bad COPD" causing cough and shortness of breath. Tr. 1542. Further, she noted that these physical issues caused depression, anxiety, and insomnia. Tr. 1542. According to Dr. Benckendorf, Crowley could not sit or stand upright for six to eight hours due to pain, and he would need to lie down during the day. Tr. 1543-44. She noted that he could stand for "several minutes" before his pain gets "bad." Tr. 1543. In terms of postural limitations, she stated that Crowley could reach above shoulder up to 30% of the time and could reach down to the floor up to 70% of the time. Tr. 1544. Dr. Benckendorf also opined that Crowley was limited to lifting and carrying five to ten pounds total and less than five pounds on a regular basis. Tr. 1544.

The ALJ gave "good reasons" for giving little weight to Dr. Benckendorf's opinion. See 20 C.F.R. § 404.1527(c)(2). The ALJ correctly observed that Dr. Benckendorf expressed much of her opinion by checking off items on a pre-printed form, which "goes a long way toward supporting the ALJ's determination to accord [the] opinion little weight." Purdy, 887 F.3d at 13. Next, the ALJ explained that she did not provide a clinical basis for limiting Crowley's reaching. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). The ALJ also explained that Dr. Benckendorf did not indicate how long Crowley could sit upright or how long he would need to lie down. Her opinion thus failed to reflect Crowley's maximum retained functioning, as a medical opinion ought to do. See id. § 404.1527(a)(1) (medical opinion reflects the most an individual can do despite impairments). As such, it was owed no special deference.

Finally, the ALJ supportably found Dr. Benckendorf's opinion inconsistent with the doctor's own treatment notes and other medical records. See id. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). As the ALJ noted, Dr. Benckendorf's examination of Crowley just

days prior to her opinion showed normal gait and station, no acute distress, and no respiratory distress.  See Tr. 1523. Although he complained of low back pain that radiated down his left leg with prolonged sitting or standing, he also reported exercising through outdoor activities.  See Tr. 1520, 1523.  Dr. Benckendorf's examinations during a number of other visits likewise documented normal gait and station despite complaints of pain.  See, e.g., Tr. 941, 2369, 2988, 2971.  Further, the ALJ noted that in December 2016, some two-and-a-half years after rendering her opinion, Dr. Benckendorf wrote that Crowley was "a lot better physically from when I first met him 5 y[ears] ago." Tr. 1997 (quoting Tr. 2370).  He had normal gait and station at that time and reported walking his dog.  Tr. 2369.  Accordingly, the ALJ appropriately determined that Dr. Benckendorf's opined limitations, including that Crowley could stand only for a few minutes at a time, were inconsistent with the evidence of record and not entitled to deference.

Crowley contends that the ALJ impermissibly interpreted raw medical data by relying upon normal gait and station findings to discount Dr. Benckendorf's opinion.  The argument is unfounded. The prohibition on interpreting raw medical data applies to "inscrutable medical terminology that require[s] an expert to interpret."  Guzman v. Colvin, 2016 DNH 075, 2016 WL 1275036, at *3 (D.N.H. Apr. 1, 2016).  It does not preclude an ALJ from

making "common-sense judgments about functional capacity based on medical findings," within "the bounds of a lay person's competence." Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990). Clinical observations concerning gait and station are among medical findings that a lay factfinder can understand without expert help and may rely upon when evaluating a medical opinion. See Widlund v. Astrue, No. 11-CV-371-JL, 2012 WL 1676990, at *9-10 (D.N.H. Apr. 16, 2012), R. & R. adopted, 2012 WL 1676984 (D.N.H. May 14, 2012) (collecting authorities). The ALJ thus properly found Crowley's normal gait and station to be inconsistent with the standing and walking limitations reflected in Dr. Benckendorf's opinion.

### 2. Dr. Rock's Opinion

The ALJ accorded "little weight" to the opinion of treating orthopedist Dr. Rock. The ALJ's evaluation withstands scrutiny because he gave "good reasons" for discounting the opinion. See Purdy, 887 F.3d at 13; 20 C.F.R. § 404.1527(c)(2).

Dr. Rock began treating Crowley in September 2012. An addendum to his treatment notes dated April 16, 2015, stated that Crowley had lumbar disc degeneration and facet disease, as well as comorbid factors of chronic pain, COPD, diabetes, upper extremity problems, and cervical degenerative disc disease. Tr. 1921. Based on these conditions, Dr. Rock opined that Crowley could not perform "even a sedentary job, considering his obvious

limitations." Tr. 1921. Dr. Rock added that Crowley could not do "any heavy lifting or physical labor" or "long hours of sitting [or] standing." Tr. 1921. Finally, Dr. Rock opined that Crowley was "probably totally disabled and unable to get or maintain any job situation." Tr. 1921.

The ALJ supportably discounted much of Dr. Rock's opinion, including that Crowley was likely totally disabled and incapable of sedentary work, on the basis that he opined on issues reserved for the Commissioner. See 20 C.F.R. § 404.1527(d) (opinions that would direct a determination of disability are not medical opinions and are not entitled to "any special significance"). In terms of Dr. Rock's limitation of no heavy lifting or physical labor, the ALJ correctly observed that the restriction was not inconsistent with the limited range of light work reflected in the ALJ's RFC finding. See Tr. 1996.

Contrary to Crowley's contention that the ALJ ignored Dr. Rock's remaining opinion that Crowley was incapable of prolonged sitting or standing, a fair reading of the decision shows that the ALJ found the opinion inconsistent with the evidence of record. Specifically, the ALJ cited the treatment notes discussed above documenting normal gait and station, as well as Crowley's conservative treatment, noting that although spinal surgery was contemplated at the time of Dr. Rock's opinion, it was not performed. See Tr. 1996. In addition, the ALJ

considered Crowley's subsequent report that he was going fishing and using a metal detector to be incompatible with the doctor's opinion precluding lengthy sitting or standing.  See Tr. 1997.

In any event, the court agrees with the Commissioner that Dr. Rock's statement that Crowley was unable to sit or stand for long periods is not an opinion reflecting what Crowley can still do despite his impairments, which is how the Social Security regulations define a medical opinion.  See 20 C.F.R. § 404.1527(a)(1).  Accordingly, this statement was not entitled to special weight.

### 3.   Dr. Turner's Opinion

Crowley contends that the ALJ's assignment of "substantial weight" to the opinion of state agency physician Dr. Turner requires remand because the opinion is based on a significantly incomplete record.  The court finds no merit in this argument.

It can be reversible error for an ALJ to rely on an opinion of a non-examining consultant who has not reviewed the full medical record.  Brown v. Colvin, 2015 DNH 141, 2015 WL 4416971, at *3 (D.N.H. July 17, 2015); Ferland v. Astrue, 2011 DNH 169, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011).  But "the fact that an opinion was rendered without the benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving significant weight to that opinion." Meldrem v. Colvin, 2017 DNH 096, 2017 WL 2257337, at *2 (D.N.H. May 23, 2017)

(quoting Coppola v. Colvin, 2014 DNH 033, 2014 WL 677138, *8
(D.N.H. Feb. 21, 2014)).  The ALJ may rely on such an opinion
where medical evidence unavailable to the reviewer "does not
establish any greater limitations, or where the medical reports
of claimant's treating providers are arguably consistent with,
or at least not clearly inconsistent with, the reviewer's
assessment."  Id. (quoting Ferland, 2011 WL 5199989, at *4).
The ALJ bears the burden of showing that either of these
conditions is present and must make that determination
"adequately clear."  Giandomenico v. U.S. Soc. Sec. Admin., 2017
DNH 237, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017).

Dr. Turner reviewed Crowley's records in April 2017, in
connection with his second SSI application with an alleged onset
date of September 4, 2015.  See Tr. 2115, 2121-23.  The records
she reviewed began in May 2016 and included three office visits,
a lumbar MRI, and a consultative examination.  In February 2014,
Dr. Fairley, another state agency physician, reviewed Crowley's
then-existing records for his November 2013 SSI and DIB
applications with an alleged onset date of August 29, 2012.  See
Tr. 105-06, 113-15.  The two sets of applications were combined
after the court remanded the ALJ's decision on Crowley's initial
applications.  See Tr. 2148.

Both Dr. Turner and Dr. Fairley opined that Crowley was
capable of performing light work, subject to similar postural

14

and environmental limitations.  Dr. Turner further limited him
to only four hours of standing or walking in an eight-hour day,
compared to Dr. Fairley's restriction of six hours.  See Tr.
113-15, 2121-23.  The ALJ explained that the two opinions were
consistent with the medical evidence, but he gave the benefit of
the doubt to Crowley and considered objective imaging findings
in adopting Dr. Turner's more conservative opinion.  Tr. 1997.

     Crowley is correct that the record before Dr. Turner was
significantly limited, as it did not include his medical records
prior to May 2016.  This, however, did not preclude the ALJ from
assigning her opinion substantial weight for two reasons.
First, Dr. Fairley reviewed a significant volume of the earlier
records that were unavailable to Dr. Turner, including the
results of a pulmonary function test that Crowley maintains
shows the severity of his COPD and that Dr. Turner noted was
lacking from her records.  See Tr. 113.  Dr. Fairley's opined
limitations are substantially identical to Dr. Turner's, with
the exception of standing/walking, where Dr. Turner in fact
offered a more restrictive RFC.  The consistency of their
opinions, which the ALJ noted, is an adequate basis to conclude
that the records predating Dr. Turner's review did not document
"a material change for the worse in the claimant's limitations."
Gruhler v. Berryhill, 2017 DNH 252, 2017 WL 6512227, at *5
(D.N.H. Dec. 20, 2017).  Second, the ALJ himself reviewed the

medical records unavailable to Dr. Turner and concluded that they did not establish any greater limitations than those she assessed.  See Byron v. Saul, 2019 DNH 131, 2019 WL 3817401, at *6 (D.N.H. Aug. 14, 2019) (the ALJ did not err in relying on a non-examining source's opinion that was based on an incomplete record where the ALJ independently considered subsequent treatment notes); Marino v. U.S. Soc. Sec. Admin., 2018 DNH 191, 2018 WL 4489291, at *6 (D.N.H. Sept. 19, 2018) (same); Ferland, 2011 WL 5199989, at *4 (same).  Accordingly, the court finds no error in the ALJ's reliance on Dr. Turner's opinion.

**B.    Evaluation of Subjective Complaints**

Crowley next argues that the ALJ did not properly evaluate his subjective complaints.  The court concludes that the ALJ supportably discounted his subjective reports regarding the severity of his pain and other symptoms as not fully consistent with the record evidence.

In crafting a claimant's RFC, an ALJ must consider all of the claimant's alleged symptoms and determine the extent to which those symptoms can reasonably be accepted as consistent with objective medical evidence and other record evidence.  20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016).  This involves a two-step inquiry.  First, the ALJ must determine whether the claimant has a "medically determinable impairment" that could reasonably be expected to

produce his alleged symptoms. SSR 16-3p, 2016 WL 1119029, at
*3. Second, the ALJ evaluates "the intensity, persistence, and
limiting effects of [those] symptoms" to determine how they
limit the claimant's ability to perform work-related activities.
Id. at *4. The ALJ must "examine the entire case record" in
conducting this evaluation, including objective medical
evidence, the claimant's own statements and subjective
complaints, and any other relevant evidence in the record. Id.;
see Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018).

The ALJ cannot disregard the claimant's statements about
his symptoms solely because they are unsubstantiated by
objective medical evidence. See SSR 16-3p, 2016 WL 1119029, at
*5. Rather, an inconsistency between subjective complaints and
objective medical evidence is just "one of the many factors" to
consider in weighing the claimant's statements. Id.

Other factors the ALJ must consider are: (1) the claimant's
daily activities; (2) the location, duration, frequency, and
intensity of any pain or symptom; (3) any precipitating and
aggravating factors; (4) the effectiveness of any medication
currently or previously taken; (5) the effectiveness of non-
medicinal treatment; (6) any other self-directed measures used
to relieve pain; and (7) any other factors concerning functional
limitations or restrictions. Avery v. Sec'y of Health & Human
Servs., 797 F.2d 19, 29 (1st Cir. 1986); see 20 C.F.R.

§ 404.1529(c)(3). But the ALJ is not required to address every Avery factor in his written decision. Deoliveira v. Berryhill, 2019 DNH 001, 2019 WL 92684, at *5 (D.N.H. Jan. 2, 2019). Instead, the decision need only "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9.

Crowley testified that he experienced chronic daily pain in his neck, lower back, and left leg, as well as difficulty breathing with exertion, including lifting weight, standing, or walking for prolonged periods. See Tr. 2168-72, 2174. He also testified that he needed to lie down or sit in his recliner with his feet elevated throughout the day to relieve pain. See Tr. 2176. The ALJ determined that Crowley's medically determinable ailments could cause the alleged symptoms, but he discounted Crowley's testimony as to their severity.

The ALJ concluded that the objective medical evidence falls short of substantiating Crowley's subjective complaints. First, the ALJ acknowledged that the results of two MRIs of the lumbar spine establish that Crowley suffers from degenerative disease of the spine but noted that the imaging showed mild to moderate changes. See Tr. 1993. Crowley contends that the ALJ either

misconstrued the evidence by failing to include a full
recitation of all the imaging findings or translated raw medical
data into functional terms.  Neither point is well taken.  The
ALJ supportably concluded that, on the whole, the imaging
results documented no more than moderate impairment.  This is
consistent with the functional assessments of Drs. Turner and
Fairley, who between them reviewed the relevant studies.  See
Tr. 113 (June 2013 MRI discussed in Dr. Fairley's assessment);
Tr. 2133, 2373 (May 2016 MRI results contained in December 2016
treatment record reviewed by Dr. Turner).  As discussed above,
the ALJ afforded substantial weight to their opinions and thus
did not render an impermissible lay opinion on the imaging data.[5]

     Second, the ALJ correctly noted that, throughout the
relevant period, Crowley generally presented with normal gait,
normal motor strength, normal sensation, and normal deep tendon
responses.  See Tr. 1993.  The ALJ supportably found those
objective findings inconsistent with disabling symptoms.

     Third, the ALJ acknowledged that pulmonary function tests
confirmed that Crowley had COPD but concluded that the resulting

---

[5]     In a single sentence, Crowley notes that the nerve root
compression from the 2016 MRI is significant because it is a
factor in assessing whether an impairment meets or equals
Listing 1.04.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.
Given that Crowley did not challenge the ALJ's step three
finding that his impairments did not meet all the criteria of
the listing, the court deems this undeveloped argument waived.
See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

limitations were consistent with the RFC finding.  The ALJ
reasoned that Crowley did not constantly experience symptoms
from this condition and his respiration was typically recorded
as normal during office visits.  Tr. 1994; see, e.g., Tr. 717,
741, 767, 1039, 1095, 1242, 1873, 2735) (normal respiration in
recorded vital signs).  The ALJ also noted that consultative
examiner Peter Loeser, MD, reported moderate diffuse wheezes and
sporadic coughing as the only objective findings relating to
COPD.  Tr. 1998; see 2408-10.[6]  Finally, the ALJ credited the
opinions of state agency physicians who considered the symptoms
of Crowley's COPD and found them consistent with a capacity for
a restricted range of light work.  Indeed, Dr. Fairley
specifically referenced the results of a February 2014 pulmonary
function test, which Crowley claims supports his complaints.
See Tr. 113.[7]

---

[6]    Crowley contends that the ALJ mischaracterized Dr. Loeser's
findings, because earlier in the decision he stated that Dr.
Loeser found Crowley's respiratory system to be "normal."  See
Tr. 1993.  Crowley acknowledges, however, that the ALJ
subsequently discussed the doctor's abnormal findings.  See Tr.
1998.  The ALJ's decision makes apparent that he deemed
Crowley's moderate diffuse wheezes and sporadic coughs to be
consistent with the limitations included in the RFC finding.

[7]    Contrary to Crowley's assertion that his COPD was a
fundamental factor in his treating providers' opinions, even
they did not tie any functional limitations to this condition.
Although Dr. Benckendorf stated that Crowley had "bad COPD" that
caused cough and shortness of breath, she explained that her
opined limitations resulted from pain.  See Tr. 1542-45.

Crowley acknowledges that the medical record in his case spans over 2,400 pages, and yet he faults the ALJ for not discussing certain records supportive of his testimony.  It is not administratively feasible for an ALJ to discuss each and every piece of evidence in the record, and the law does not require it.  See Lord v. Apfel, 114 F. Supp. 2d 3, 13 (D.N.H. 2000) (discussing cases).  The court is satisfied that the ALJ's decision sufficiently considered "whatever in the record fairly detracts from its weight" in assessing whether the objective medical evidence supports the severity of Crowley's subjective complaints.  See id. at 14 (internal quotation marks omitted).[8] Although "the record arguably could support a different conclusion," the ALJ's assessment is supported by evidence that a reasonable person would accept as adequate.  See Irlanda Ortiz, 955 F.2d at 769-70.  Thus, the court must uphold it.

The ALJ next found that Crowley's reported activities were inconsistent with the severity of his self-described symptoms. The ALJ noted that Crowley reported using a snow blower and lost 15-20 pounds in a 7-month period in 2016 due to increased

_____

Similarly, Dr. Rock only listed COPD as a comorbid factor without providing any resulting limitations.  See Tr. 1921.

[8]    For example, although the ALJ did not cite the records documenting instances of an antalgic gait and inability to toe or heel walk, the ALJ relied upon Dr. Turner's opinion, which discussed those findings.  See Tr. 1997, 2122.

exercise.  Tr. 1993; see Tr. 2366.  Further, Crowley told one of

his providers that he was fishing and occasionally using a metal

detector during the relevant period, which the ALJ noted

requires physical exertion incompatible with his alleged

symptoms.  See Tr. 1997.  Although Crowley now maintains that

his medical records misstate his activities and that the ALJ

should have relied instead on his testimony about the limited

nature of those activities, conflicts in the evidence are for

the ALJ to resolve.  See Purdy, 887 F.3d at 13.

Finally, the ALJ found Crowley's treatment at odds with his

testimony.  He noted that Crowley was treated conservatively

with narcotic medication and injections for pain relief.  Tr.

1993.  Although spinal surgery was contemplated at one point, it

was never performed.  See Tr. 1994, 1996.  The ALJ also noted

that Crowley continued smoking despite its negative impact on

his COPD.  See Tr. 1994.  The fact that Crowley continued

smoking against medical advice is a factor the ALJ properly

considered in discounting his subjective complaints of disabling

conditions.  See Collard v. Colvin, 2015 DNH 001, 2015 WL 93723,

at *5 (D.N.H. Jan. 7, 2015) (claimant's continued smoking

despite its adverse effect on his impairment supported the ALJ's

credibility finding); Russell v. Barnhart, 2004 DNH 009, 2004 WL

51315, at *7 (D.N.H. Jan. 9, 2004), aff'd, 111 F. App'x 26 (1st

Cir. 2004) (same); Mooney v. Shalala, 889 F. Supp. 27, 32 (D.N.H.

22

1994) (same); see also SSR 16-3p, 2016 WL 1119029, at *8 ("if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record").  In sum, substantial evidence supports the ALJ's decision to discount Crowley's statements concerning the limiting effects of his pain and other symptoms.

### C.  Other Evidence

Crowley also argues that the ALJ erroneously ignored evidence that Crowley would be absent from work too frequently to sustain work.  To the extent he points to evidence of his intolerance to prolonged standing or sitting, the court rests on its previous discussion of the ALJ's consideration of this evidence.  Additionally, Crowley argues that he must attend medical appointments at least two days every month, a level of absenteeism that the vocational expert testified most employers would not tolerate.  See Tr. 2042.  Although the record indeed shows he attended several appointments on a monthly basis, Crowley has failed to demonstrate that he would have to miss work on multiple days each month.  As the Commissioner notes, Crowley did not work during the period in question and thus had the flexibility to schedule appointments at his convenience.  It is plausible that he could combine several appointments into one day so as to miss only one day of work or attend appointments

during non-working hours.  Further, neither of his treating providers opined that his medical appointments would interfere with a normal work schedule.  See Tr. 1542-46, 1921.  The court therefore finds no error in the ALJ's failure to account for Crowley's potential absenteeism.

The court likewise finds no merit in Crowley's argument that the ALJ should have found him disabled based on the vocational expert's testimony that a hypothetical claimant who can sit or stand for only six hours combined and needs to lie down at an unpredictable time for a half hour, would be unemployable.  As discussed above, substantial evidence supports the ALJ's rejection of each of those limitations.

### IV.  CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the court grants the Commissioner's motion to affirm (Doc. No. 10) and denies Crowley's motion for an order reversing the Commissioner's decision (Doc. No. 9).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

Joseph N. Laplante
United States District Judge

February 10, 2020

cc:  Ruth Heintz, Esq.
     Jessica Tucker, Esq.